Good morning, Your Honors. Just a housekeeping matter first. I intend to reserve five minutes for rebuttal. We'll see how that works out. If it's less than that, it's less than that. I'll be okay with that. May it please the Court. My name is Gene Brocklin, and together with Mike Kuznetsky, we represented Don Wakefield in the underlying trial of this copyright infringement action, and we represent Mr. Wakefield on the appeals and the cross appeals. There is no doubt that Don Wakefield falls squarely within the protection of the Copyright Act. His work as a sculptor is exactly the type of thing the Copyright Act is meant to protect. It protects a multitude of creators, musicians, writers, software developers, architects, and certainly artists, and it's there to protect them. It clearly is also meant to deter people. It's meant to deter infringers. Mr. Wakefield created a large sculptural work called Untitled that was blatantly infringed by the defendants Igor Alenikoff and Olin Properties. Those individuals and entities, who I'll refer to as the Olin Parties, clearly used Don Wakefield's Untitled to have made almost exact or actually exact copies in China cheaply, and they were displayed at the Olin Properties offices and apartment buildings. The jury apparently agreed with you, right? The jury did, Your Honor, and the reason this matters is because ultimately, under Ninth Circuit law, the courts say that an infringer is like an ordinary thief, and they are not to be able to quibble with the amount of the license fee that the jury rightly awards. And that's why I mention this. In this case, the jury did award actual damages of $450,000. There were, at the time we went to trial, we went to trial on six separate infringements. So the amount awarded, if you look at it on a per-infringement basis, is $75,000 per infringement. We believe that the evidence at trial clearly supported an award of $75,000 per infringement. The statute says you're entitled to actual damages, and it's very simple on that. The case law, as it's developed, allows different ways to prove those actual damages. One way is the fair market value of the use of the work. We believe that we prove that by proving the value of untitled. That value was proved by Don Wakefield with his testimony, by that of his co-creator, Chick Glickman, and also by- Their estimates were wildly different. They were wildly different, Your Honor, and I think that's attributable to the fact that with art especially, beauty is in the eye of the beholder. Well, it's also the case that the jury decides who they're going to believe and which testimony they're going to credit, right? That's correct, Your Honor. That's correct, and clearly- And there was also some evidence from which you could extrapolate an hourly rate that an American artist would charge to make the sculpture and the number of hours that it would take, and it's also within that range. That's correct, and that was the basis of Mr. Wakefield's testimony as to value, and he was the one who did all the work that created Untitled in the first place. Counsel, what do we do with the fact that Mr. Wakefield testified that he did not make copies? Ultimately, Your Honor, that doesn't matter because the case law in the Ninth Circuit says that you're not to punish somebody for the fact that they didn't license it. In other words, he's being compensated for what he would have had, which is the opportunity to copy it if he had chosen to copy it. That's right. Or the opportunity to license it. He's being compensated for a hypothetical license, but he testified that he wouldn't do that. What I can point you to, Your Honor, to answer that question is the Oracle case. The trial court and the counsel for the Olin parties only talked about the district court opinion in Oracle, but this court, the Ninth Circuit in Oracle, said that it doesn't matter that somebody wouldn't license their product. In fact, the Oracle case is between competitors. Of course, you're not going to license your competitor to use your software. You're going to license end users, but you're not going to license a competitor. The court says that's not fatal to a cause of action under the Copyright Act because what we're talking about is a hypothetical. Does it change the measure of damages? I don't think it does. The measure of damages, it changes the evidence that you might use to get there. The way that you've done this is to say, well, he wouldn't have done this, but here's the measure of damages if he would do something that he says he wouldn't do. That's absolutely right, Your Honor. It seems like a little bit of an odd way to get to the damages. It does seem like an odd way to get to the damages, but it's the only way to get to the damages when you have somebody who doesn't license their work. Just because you don't license your work, that's not fatal to a copyright infringement claim. I think it was the Mackey case, which is quite a bit older, which talked about that it's the hypothetical willing licensor that you look at. You assume a willing licensor. That's correct. Even though, as a practical matter, he doesn't want to license his work because he likes doing one-of-a-kind work, you assume that he would in order to calculate the hypothetical license. The Oracle case says that what you do to calculate the hypothetical license is you look at the differences. The low end is the cost to produce. The high end is the benefit to the infringer. The benefit to the infringer here was they have exact copies, same size, same shape. Everything is exactly the same. The benefit to the infringer was they got to go to China, pay roughly $20,000 per copy, and get a copy that looks exactly like one that's worth considerably more. There was an upper end of evidence as to the benefit to the Olin parties. Based on that upper end of the benefit, the jury was entitled to find a hypothetical license. A hypothetical license of $75,000, when the upper end of the benefit was considerably more than that, is absolutely reasonable. The instruction said actual damages means the amount of money to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. That's one way to measure it, right? As determined by the fair market value of the use made of the work. And neither party is challenged in the instruction, so they are what they are. The fair market value of the use, in this case, is they used it to make exact replicas. This would be a different question if they had made little one-inch figurines that sat on a desk. If that was the case, we would be hard put to say that it's the same hypothetical license value as creating an exact replica. And that's why we cite to the Eels case, because it's much the same case where an architect comes in, and she says, my plans are worth $12,000. That's what I charged for my plans. And the court says, fine, that's your damages for infringement. And much like that case, here Wakefield came in and testified as to what he believed was a reasonable value of the work, the sculpture. Her work was the architectural plans. Eels would be different if somebody had copied her plans and framed them and put them on the wall. Then she couldn't claim $4 a square foot for those plans, but they didn't. They used them to build a house, the normal use of architectural plans. So she gets the value of her architectural plans. Sculpture is for display. And in fact, that's exactly what the Olin parties do, is they display these sculptures in much the same way as the original is displayed in Chicago. So the use is the same in that it's exactly the use of the copyright for that which it was intended. Architectural plans intend to build a house. Sculpture intends to display. And so it's reasonable to apply the Eels logic to this case. I would point out that you don't even necessarily have to get to whether or not the evidence was correct that the jury reviewed, because at summary judgment, they made these same arguments. And Judge Guilford on summary judgment said, you know what? They've come forward with evidence of value. They've come forward with the Lela Hirsch appraisal. That is sufficient. The Ninth Circuit has said in the McSherry case, in the Andrani case, that the test is the same on summary judgment as it is on JMOL. So if something is sufficient. We have the Novo review on both of those things. You do, Your Honor. You do. But the Fourth Circuit has also said that it becomes law of the case. Evidence sufficient to defeat summary judgment becomes law of the case and is therefore sufficient to defeat the JMOL. So we think that the evidence was sufficient to show the copyright damages, whether it's on the issue of the fair market value of the use or whether the alternative way that the courts look at it, which is a hypothetical license value. This jury had plenty of evidence to calculate a hypothetical license value, and I think they calculated one that is eminently reasonable based on the evidence. There's a third way that some courts have also found evidence sufficient, and that's the saved acquisition costs, which comes out of the Seventh Circuit. In the DELTAC case, I don't think this court has to get there, but I think it could. I think DELTAC is based on Ninth Circuit law. It says saved acquisition costs are a proper measure of damages. Really what it's talking about is that's sort of the use, that they've used it to save the cost of acquiring it. So I think it would be logical for this court to adopt a DELTAC rule, although I don't think the court has to do it in order to reinstate the jury's verdict. With respect to the other item of damages under the Copyright Act, the infringer's profits, this was ruled on by the judge, Judge Guilford, on summary judgment. Just speaking for myself, I have some difficulty with that part of your appeal because it seems to me that there's a pretty attenuated relationship between putting the sculpture out front and how much profit they made leasing the building. I mean, there's nobody who testifies, for example, that if they had a bare sidewalk and no attractive sculpture in front, they would have only been able to rent for a lot less or something. I just don't see the connection. I understand that concern, Your Honor, but ultimately the way the Copyright Act is set up, that burden sort of shifts once we show causal nexus. Yes, you do have to show causal nexus. And I believe when you look at the other cases where there's causal nexus found, I think we submitted more evidence than is in the other cases, many other cases. If you look at the Frank Music case, which there's a Frank Music I and a Frank Music II, it involved a little slice of a play that became part of a musical review in Las Vegas where it was just a little piece of that musical review, and ultimately the plaintiff recovered damages not just for the tickets, the cost of going to see the show, but also the gaming revenue and the hotel revenue. Courts have approved very tenuous connections, and I think that's fitting under the statute because the statute says you just have to show the gross revenues, and the case law has said, yeah, you also have to show causal nexus, but once you do that, it shifts. And not only did we show that the sculptures were displayed outside the offices, we also demonstrated that they had a website on the apartment building that advertised it that said, come see our sculpture garden, take a stroll through our exquisite sculpture garden, and you click on another link, and it goes to pictures of half a dozen sculptures or more, two of them are these sculptures. So clearly they're being used as part of the marketing, and plaintiff's expert, our expert, said that that is a legitimate use of sculptures, it's an accepted use to market properties, and he concluded that there was a causal nexus. At the very least, I think we made an issue that should have survived summary judgment, and then the case should have gone to trial on that, and it would have been up to the defendants to come forward and say, no, people rent from us because of our gym, or because of our palm trees, or whatever. That's their right to do that. Just quickly, I believe the court was also wrong in partially granting summary judgment on Mr. Wakefield's 2008 discovery of one of the copies. Mr. Wakefield's declaration clearly said that he thought he was looking at his original, that's how good the copy was. He simply was not on notice, and the court should have let that issue go to the jury as well. Thank you. Thank you. Thank you very much, Your Honors. Eric Schiffer on behalf of Mr. Olenikoff and the Olen Corporation. Your Honors, I'm going to start. We also have a cross-appeal, and I understand that you prefer we discuss all the issues. I'm going to start by addressing some of what's already been addressed by counsel for Mr. Wakefield, and then I'll move into one of the remaining issues, which is the preliminary injunction judgment. I'm sorry, the permanent injunction judgment. I'm going to start with the actual damages issue, Your Honors. This is the kind of a case where the headlines can sometimes carry the day, and the headline from this case is infringement found, no damages given. And that just sounds inherently unfair, and I realize that. But I think if you read the article, and if you dig deeper, I think it was the right result. Well, why is that? Why is this not within the strike zone of what the jury could reasonably have decided? If we're trying to measure the fair market value of use, it seems to me one way to do that is for the jury to pick, what would this thing cost to buy, fair market value? And another way, that would be sort of a piece of information for them to throw into the hopper. Another one would be what would it cost for me to go out and have another one made, right? So we've got the hourly rate and what this piece of granite would cost and whatnot. And as long as the jury's damages number for actual damages is within that strike zone, why would we interfere with it, counsel? Because what needs to be conveyed to the jury and what was not conveyed to the jury, there was no evidence to support the cost of the use of the design, not the cost of purchasing a sculpture. That's not the proper measure. Did you miss my question? We're trying to measure the fair market value of use, right? Correct. Okay. And nobody challenges this instruction, I don't think, that Judge Graber and I just referred to earlier? That's correct. So if they're trying to measure the fair market value of use, and they were given evidence about what it would cost to go buy one, surely I wouldn't pay more to use it if I could go buy one for a lesser amount. And they were also given an indication of what it would cost to go create one, to make a new one, because that's what the defendants did here, or that's what the jury decided anyway. As long as their measure of damages of $450,000 is within that strike zone, within that bracket, why would we interfere with it? Because it's not within that bracket, Your Honor. The evidence that was provided did not talk about the use of the design. The evidence that was provided – Are you telling me that the only thing that's at issue are the licensing rights? Well, that's one way that it can be measured. But that's the principle measure that you're suggesting, right? That's the typical measure, and, frankly, that was – here's the problem we have here. There has never been any sale of this product. Okay? All the testimony that came in was speculation. We had testimony from Glickman, if no one else, admittedly a wide range, but they were given testimony about what the fair market value was. They were given testimony of the fair market value to purchase the sculpture. Right. But the cases discussed in the Ligon case, which we cited, talks about the difference between purchasing the item as a measure and purchasing the ability to use the design of the copyright as a measure. Well, there's also evidence, though. If they had asked the artist to make a copy, there's evidence of how long it would have taken him, how much he would have charged per hour, and how much the marble or – I think it was marble. Granite. Granite. I was just thinking wrong stone, but would have cost. And when you multiply all that out, it comes out to more than what the jury awarded. Correct, Your Honor, but that's not what the statute requires, and that's not what the cases have required for showing actual damages. And if we pull back a little bit, Congress was very specific. But that would have been one of the options, that a person who saw the original and wanted a copy, how could they have acquired a copy to use for themselves? They would have. And one way would have been to ask the sculptor to make another one, correct? And another way would have been to license the use of the sculptor's copyright, the design. No different than licensing the use of the belt as opposed to buying belts. You know, the licensing thing seems to make a lot more sense if you're talking about publishing books and somebody's copying a book, or if you're copying paintings, things that can be reproduced fairly easily and quickly. They're fairly fungible and can be mass produced. That seems to make a lot of sense. This is a one of a kind. And it seems to me that if your client had gone to Mr. Wakefield and said, gee, I saw a photo of this on the Internet. I really like this. I'd like you to make me one just like it. And Wakefield said, I don't do that. I broke the mold in my head. But I'll make you something else interesting, and maybe you and I can work on it a bit. You know, they could have worked something out. That's not licensing, and he's not willing to license that. But that's also not what the statute and the cases have defined as actual damages. Tell me what the statute says. What are you referring to? Are you referring to 504? If you look at the jury instructions, 17.23, based upon 504, it says you measure actual damages by the reduction of the fair market value of the copyright caused by the use. And one way to manifest that. It's a one of a kind, and he wishes to leave it as a one of a kind. It's destroyed the entire value of it. Well, that begs the question, then, where are the damages? If it's one of a kind, if it's never been produced again, where are the actual damages? This is an alternative. Because if you'd gone to the artist, the artist likely would have said, I'll make you something similar. I'm not going to make you something identical. But you want an original Wakefield? I'll give you something even better. But we're talking about a specific copyright here, Your Honor. That's the claim. The claim isn't go make me something. The claim that's being pursued in this complaint is you copied my specific design. This is a design that I now registered with the Copyright Office. And which, by the way, Congress authorizes, encourages registration of copyrights very early on in the game, so we don't have to have this discussion. Had there been a statutory damage discussion, we wouldn't even be standing here. Statutory damages were not available in this case because he didn't register it. So then Congress says, okay, well, you can look at actual damages, but you have to show damage. It's not enough to say, well, you infringed, and therefore it's got to cost you something. There is a measure of damage, and that measure is the reduction of value based upon the use, not based upon the actual purchase of the object. I understand that, but what you're resisting is our question, which is if we're trying to measure the fair market value of the use, why isn't the factors that we've talked about, one of which would be fair market value, one of which would be the cost to recreate it, because surely somebody who could recreate it for less money would do so rather than paying to just use it. Why wasn't the jury free to come in with a number, in this case $450,000, that's within that what I keep calling the strike zone? And as long as they did, why would we take this away from the jury? Well, Your Honor, the problem with that analysis is what if our clients had wanted to have a statue, a sculpture that was similar to this but smaller or made of a different medium? So now we're talking about the design. I want that design, but I want it to look a different way. Well, when I made it, this is what it cost. This is how long it took. Well, I don't want that. I want the design. We're talking about the design, Your Honor. That's the difference here. That's what was at issue in the Frank Musick case. That's what was at issue. What you're not engaging in is that juries make sausage all the time, and you're not challenging this instruction. Correct. And we don't lightly take away jury verdicts. I understand that. So you're going to have to convince us that whatever it is that they came back with, that $450,000 was really beyond the realm of reason. When I say us, I'm only speaking for myself. I understand that, Your Honor. And I don't see why this is. Because if you look at the sufficiency of the evidence, there was no evidence of a licensing fee. The only evidence was how much it would cost at some point in time to buy the sculpture that was made once over 20 years ago and never made again. Not the only evidence. That was the evidence from Mr. Glickman. That was the evidence from Mr. Wakefield. And the expert said, and by the way, I think the sculpture in 2013 is worth this much, which was five years after the infringement. There was also evidence about what it would cost to create one, right? Well, there was evidence of the time he took to create one. And what the granite would cost. Correct. But that brings me back to my point. We're talking about licensing the use. What if I didn't want granite? What if I wanted wood? What if I didn't want something 20 feet tall? What if I wanted five feet tall? The issue is how much is the design of that copyright worth? And there was no evidence presented to that jury to address that question. What if I wanted the design on a T-shirt? What if I wanted the design on a tchotchke on my desk? There was no evidence of what it costs to use it. The only evidence that was presented was what it cost at the time to make it. And that's not the same thing. And that's not what the jury instruction required. That's not what the case is on this issue. The Mackey case talks about actual damages as being the extent to which the market value of the copyright has been injured or destroyed by the infringement. There was no evidence of that here. There was no evidence of any damage. What the jury was trying to do was saying we don't like that it was infringed, so we're going to take whatever number we heard and give you something for it. Well, it actually wasn't one of the numbers they heard, so clearly they did some math on their own. There was confusion, Your Honor. What do you do with our pronouncements that the thief doesn't get to quarrel with the value of what was stolen? Well, of course, Your Honor. The issue is that what you just said is a very true statement, but it doesn't take away the obligation of the plaintiff to prove actual damages. Again, we're not talking about statutory damages. We're talking about a copyright that was never registered ahead of time. So these are the options that Congress has given. There's actual damage and there's potential indirect profit damage. Let me ask you about that, about the indirect damages. The one piece of evidence that causes me some pause about your part of the argument on indirect damages is the sort of use of this visual and this sculpture as part of the advertising for the benefits of the property. If it was just out there and all the ads were things like, you know, we have nicely tiled floors and lots of light and, you know, a great neighborhood, soundproofing windows and on and on, but you actually made use of the sculpture as part of the advertising for the building. What are we to make of that? And is that sufficient to show a nexus between the use of this stolen object and the profits? Well, Your Honor, we believe it was not sufficient just as the district court found. And the district court found it was tenuous at best because it was highly... We have to NOVA review of that question. Correct. I understand, Your Honor. It was a highly speculative finding. The evidence showed from the expert report by Mr. Rosenfeld... I'm sorry? You don't mean finding. You said it was a highly speculative finding? I'm sorry. The evidence submitted was highly speculative. Okay. Thank you. I apologize, Your Honor. I misspoke. Not at all. I just want to make sure I'm following you. Right. First of all, their own expert basically said sculptures can enhance the value. That was the exact word. He said art enhances value. And that may be a true statement, but a lot of other things enhance value, too. And the line of cases dealing with... My concern is that your client used it specifically to advertise the virtues of one of these properties, right? It was among many other images of other sculptures that were used. He answered yes to Judge Graper's questions. It was a marketing feature. It was a part of what was presented. And so what weight should we give to that in determining whether there's evidence of indirect damage? Well, there has to be that nexus. Why isn't that a nexus? Here's the stolen object. We love it. Come see it. Where is the evidence that anyone rented space in any of the buildings because there was a sculpture out in front? There were also manicured gardens. There were also water features. It was also a Class A building. There's geographical desirability locations. There's a whole host of reasons why revenue would go into that building. And to say, well, that sculpture was sitting in front, so that must have been it, I think is highly speculative. And there was no evidence to tie it any further than the fact that it was there. How much has to be there? Would you have had to have an expert who said that without this sculpture, we think their revenues would have been 3 percent less or something like that? I believe so, Your Honor. And here's why. If you look at some of the cases, look at the Mackey case. In Mackey, this court found that, again, involving a sculpture, that an image of a sculpture on a brochure advertising a symphony was not enough to show a causal nexus because it was just one of some other features there. He would have had to show that he lost tenants or he wouldn't have had Class A designation or something? There would have to be something. And the evidence here showed that the building was already a Class A building before the sculptures ever arrived. That was in Mr. Olenikoff's declaration, and he had a copy of the listing agreement. But look at some of the other cases. From the Eighth Circuit, we have the Andreas v. Volkswagen case. In that case, there was found to be a causal nexus, but the infringing text was the centerpiece of their ad. It appeared in everything where the cars appeared. If you look at the Garcia case from the Northern District of California, there was a photograph on a wine label. It was a prominently featured photograph, and it basically was a centerpiece of the wine label. That's the level we need to get to so that we can draw that straight line. To have something in a courtyard with lots of other features and lots of other reasons why someone might want to rent space there is way too tenuous to draw that line that needs to be a straight line in order to satisfy that causal nexus requirement. If I think we have case law for—I'm sorry, were you done? I was just going to say that Mr. Rosenfeld's expert report even pointed to all the other reasons why property can be considered Class A. He offered no opinion as to what specific revenue trail could be attributed to the sculptures. He said, in fact, Class A buildings exist because of all these features, and these are all the features these buildings had. To say that, well, it was there, therefore it gets all the profits, I think is too far attenuated. So I would leave it at that unless Your Honor has additional questions. I have a question. We have case law that talks about what it takes for us to decide that a jury's verdict is just unsupported when we're talking about actual damages, and I think it uses the word monstrous. I mean, it really has to be outside the ballpark. I don't know what it is with me and the baseball metaphors today, but what's your best shot that this one is just so far afield that—oh, there I went again— so far afield that it cannot be—that it had to be taken back? That the copyright work has to have been injured or destroyed because of the defendant's use. The value of the copyrighted work has to have been injured or destroyed because of use. There was no evidence of that. The only evidence presented was here's how much it would cost to buy one. It's not the same thing. Your argument really is there was no evidence from which the jury could have decided the fair market value of the loss of use? Well, there was a lot of improper evidence, but there was no proper evidence of what the cost of a design for use of the design— By improper, you're not challenging the introduction of any of this evidence. You mean insufficient or not relevant or something? It was certainly confusing to the jury. I'm just trying to understand your argument. When you said improper evidence, what do you mean by that? Well, it was insufficient to support a finding of actual damages. That's different, and I appreciate the clarification, but you've also said that the jury was confused. You've said it two or three different times. Correct. And I understand you didn't like the result, but do you mean confused as in they sent out jury instructions that told you that— or indicated to you that they didn't understand? Well, no. The jury instructions, I believe, were clear, but the evidence that was presented to them was not evidence sufficient to satisfy what that jury instruction required. Right, that's what you just explained to Judge Graber. Correct. So perhaps confusion was the wrong word. Is there anything to you that indicates that they were confused other than you think that they drew a conclusion unsupported by the evidence? No, Your Honor. Okay, thank you. Your Honor, I see that my time is waning. Can I move briefly on to the permanent injunction issue with my remaining— Well, I will say one other thing with the statute of limitations issue that was touched upon briefly. The evidence showed—well, first of all, looking at the jury— The jury made specific findings, correct? Correct. And it believed him that he didn't have reason to know more than three years before. So why isn't that sufficient? His testimony, the jury believed him. Well, Your Honor, the problem is he viewed firsthand a sculpture that he thought was his own. He thereafter said, well, I'm going to send you an email and prove it's my own. He sent it, nothing further happened, and then he did nothing further. He was told at the time, no, I don't think so. Correct, which would be an indicia of infringement that would be incumbent upon him to pursue, and he never did. You just think he was on notice and he needed to do more to inquire. Yes, Your Honor, absolutely. When you see something you think is your own, you're told it's not. To me, that puts him on notice as of 2008. I think his response would be—I understand this is a ticklish issue, but that's what he said. I inspected it closely. I didn't just drive by. I inspected it closely, inquired, talked to a guy. That guy came out, said, nope, that's not yours. And then he sent off—I thought that was interesting. He sends off this email, and he didn't get any response. It's not that he did nothing. He sent it off and got no response. What about that? And then he puts it on his website. He puts a photo of the piece on his own website and conveys to the public, anybody looking at the website, that this is his own work. So how is that not an indicia of infringement? That's our point. He should have been put on notice. He thought it was his, and the jury believed him. He thought the original was moved, right? Well, he was told that it was not his. He was told by someone at the building who gave them a business card saying this is not yours. Why isn't that just an ordinary jury question, and they happen to believe him and not your argument? Well, then I would just like to briefly address the granting of the summary judgment. I think that was appropriate. The jury had no way in on that. The court found that that scenario was insufficient for him to have that claim, and we believe that was proper. Let me move quickly, if I can, to the permanent injunction issue, Your Honor. Yeah, I'm going to cut to the chase on that one as well. Your client was given a choice between returning the sculptures to the plaintiff or destroying them, and made a choice, and now is complaining about the result? This is what I'm confused about. The order to destroy was at your client's option, was it not? Well, they're not. Basically, they're both destruction options. Answer the question. You had a choice, correct? Correct. And you preferred destruction to return, correct? Your client did. Well, those are the options given, but what wasn't given was another reasonable disposition, which the Copyright Act offers under Section 503B, which we believe should be attribution, to have us put on a permanent fixture. Counsel, you have to convince us that the judge abused his discretion by saying it's not enough to have – the jury found this was basically stolen, and that the remedy should be now you have to put his name on it? Well, Your Honor, he himself said he couldn't tell the difference. And wouldn't a trial court judge perhaps be a little concerned that that would be a massive incentive to continue this kind of behavior in the future? If all you have to do when you're caught red-handed, hand in the cookie jar, is to put the artist's real name on it? Is that your argument? Your Honor, that's where we get to the distinction between deterrence and punishment. Well, first of all, it's an abusive discretion standard, is that right? It's abusive discretion, Your Honor, correct. But under the sports forum case, all conclusions are freely reviewable. And I would say when you look at the irreparable injury prong especially, there was no evidence of irreparable injury here. You know, it strikes me – I know this isn't literally true, but it strikes me that this argument is quite contrary to your argument about indirect damages. You really want to hold on to those sculptures because they're valuable to you or your client. And so it just strikes me as quite inconsistent with your other arguments. Well, what's inconsistent, Your Honor, is the plaintiff wanting them destroyed because he's suffering irreparable harm when he couldn't even tell that they weren't his. So I think there's a duplicity as well. It seems like the best solution, counsel, would have been to go over and make him a good offer, including putting his name on the sculpture saying, you know, inspired by, after, you know. And perhaps with an apology. Perhaps, Your Honor. But that doesn't take away the eBay factors of a finding of irreparable harm in this case, Your Honor. The district court judge says it's a one-of-a-kind work that defendants infringe. That's not irreparable harm. That doesn't show anything imminent or great harm or something certain. It's just not there, Your Honor. We believe it was an abuse of discretion. We believe that the adequacy of the remedy, that factor was not met as well. We believe that the court did abuse its discretion. And alternatively, that there should be an attribution option allowable to the defendants in this instance. Thank you, counsel. Thank you very much. You have some rebuttal time remaining. Thank you, Your Honors. Just a couple of points on rebuttal. Mr. Schiffer spent a lot of time saying to you on the actual damages questions, well, what if this was a little different? What if he had put it on a T-shirt? What if he had made a smaller piece? What if this? What if that? Those aren't the facts. Counsel, what's your strongest argument that the jury had sufficient evidence to support the $450,000 damage award? The strongest argument for that, Your Honor, is that the use they made, and it's fair market value of use, the use they made was to get exact copies. If they wanted exact copies and they had to go to Wakefield, and Wakefield's price would have been $160,000. To make a new one. To make a new one. To make a new one? To make a new one. And they wound up with, now we have a little question of whether it's six or seven or eight, but is that your strongest argument? Yes, Your Honor. And these aren't, it goes to the other issues raised, these aren't things we can just stamp out. It's not like CDs or photographs. It's painstaking work. You can't say, well, for six I'll give you a less price. It takes the same amount of time to do each and every one. And so those are the particular facts that this jury had. And they had the facts relating to what the cost would be to create the new ones. And they're, as you say, it's well within the sweet spot. It's less than, considerably less than the jury could have awarded. On the issue of the indirect damages, I'm glad Mr. Schiffer talks again about the Andreas case. Because I think that's spot on for us. And it shows how advertising is sufficient for causal nexus. In the Andreas case. But, counsel, you didn't put a price tag on it. Nor did they in Andreas. But it's unreasonable to say, well, we should get all their profits because. No, that would be unreasonable. But the statute provides that the burden shifts. And they come forward and say, well, no, the profits are. They'll probably come forward and say, well, we didn't make any profits on our rentals. No, but there was evidence that all these different factors come together to make it an attractive place. And it isn't really particular to the sculpture, which is a way of responding to that. And that's a response that they should have had to make to the jury. But isn't it uncontested? They already had class A space. That's correct, Your Honor. But what you can't get around is that they used it as part of their advertising. In Andreas, Andreas had a phrase that was something like, you know, life is short, have fun or something. And they said, life is short, have fun. And showed an Audi TT coupe cutting through the countryside. And that was sufficient causal nexus to get profits from the sale of Audi TT coupes. When I think we all would think that a decision to purchase a $30,000, $40,000, $50,000 car wasn't made based just on that advertising. It was made based on a multiplicity of factors. And it's those multiplicity of factors that the Copyright Act requires them to come forward with once there's a causal nexus. And we think there was sufficient from the website advertising. With respect to the injunction issue, Your Honor, I think that it's clear that the judge did not abuse his discretion. And with respect to the statute of limitations issue, I don't know what they expected he could have done, that Mr. Wakefield could have done, that he didn't do. In fact, he couldn't even. Well, I think their argument is they expected him to inquire further, to call his friend, to find out, hey, did you move this sculpture? That's what they argue in the brief. That's what they argue, but there's no suggestion that that would have resulted in anything. And, in fact, even in discovery, we didn't find all the infringing sculptures. So the virtue or the failure to investigate should fall on deaf ears. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments of both of you in this very interesting case.
judges: Graber, Bybee, Christen